UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:                                                    Chapter 7

Julio C. Anchieta,                                        Case No. 8-23-71283-las

                              Debtor.

-------------------------------------------------------------------x

Julio C. Anchieta,

                              Plaintiff,                      Adv. Pro. No. 8-23-08026-las

       v.

Wells Fargo Bank, N.A.,

                              Defendant.

-------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT

In this adversary proceeding, *pro se* plaintiff Julio C. Anchieta ("Anchieta") seeks a declaratory judgment that he holds title to residential real property located at 55 Middlecamp Road, Westbury, New York (the "Middlecamp Road Property") free of the mortgage interest claimed by defendant Wells Fargo Bank, N.A. ("Wells Fargo"). Anchieta's complaint centrally alleges that he purchased the Middlecamp Road Property from the prior owner, Daphnee Doresca ("Doresca"),[1] without notice of any claimed interest of Wells Fargo and in reliance on a satisfaction of mortgage recorded by the Nassau County Clerk on March 3, 2017. Based on these grounds, Anchieta alleges that he is a "bona fide purchaser/encumbrancer" for value

---

[1] Doresca is currently a chapter 7 debtor before this Court, case no. 16-75006. The Middlecamp Road Property is listed in her bankruptcy schedules and is property of the estate under 11 U.S.C. § 541(a). She purportedly sold the Middlecamp Road Property to Anchieta during her bankruptcy case without the consent of Wells Fargo or notice to the chapter 7 trustee administering her bankruptcy case. Neither Wells Fargo nor the bankruptcy estate received any of the proceeds from the alleged sale. Doresca has four bankruptcy filings, *see* case nos. 15-70846, 15-74157, 16-75006, and 19-77714. Each of the bankruptcy filings were made within days of a scheduled foreclosure sale of the Middlecamp Road Property.

and the Middlecamp Road Property is not subject to the mortgage interest asserted by Wells Fargo. *See generally* Complaint ("Complaint" or "Compl."). [Dkt. No. 1].[2]

Now before the Court is Wells Fargo's motion to dismiss the Complaint in its entirety pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6), as made applicable to this adversary proceeding by Bankruptcy Rule 7012(b). [Dkt. Nos. 24-26]. Specifically, Wells Fargo contends that Anchieta's claims must be dismissed because (i) Wells Fargo was not properly served with the Summons and Complaint, (ii) the claims are barred by the *Rooker-Feldman* doctrine and the doctrines of *res judicata* and collateral estoppel, and (iii) the claims fail to state a claim upon which relief can be granted. Wells Fargo further argues that the Court should dismiss Anchieta's claims based on the abstention doctrines established by the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971), and *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), because hearing this case will interfere with an ongoing state court proceeding.

Anchieta filed opposition to the motion to dismiss and cross-moved for the entry of a default judgment asserting that Wells Fargo failed to timely respond to the Complaint. [Dkt. Nos. 28-30]. Wells Fargo filed a reply. [Dkt. No. 31]. In response, Anchieta filed a declaration in further support of his cross-motion and in opposition to the motion to dismiss. [Dkt. No. 33].

The Court has reviewed thoroughly the parties' submissions and arguments. For the following reasons, the Court finds that the claims asserted in the Complaint are barred by the doctrines of *res judicata* and collateral estoppel. Accordingly, Wells Fargo's motion to dismiss is granted, and the Complaint is dismissed with prejudice.

---

[2] Unless otherwise stated, all docket references to the adversary proceeding are cited as "[Dkt. No. __]" and all docket references to the related bankruptcy case of Anchieta, Case No. 8-23-71283-las, are cited as "[Bankr. Dkt. No. __]."

## Jurisdiction and Venue

The Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference of the United States District Court for the Eastern District of New York, dated August 28, 1986 (Weinstein, C.J.), as amended by Order dated December 5, 2012 (Amon, C.J.) entered in accordance with 28 U.S.C. § 157(a). Personal jurisdiction is contested by Wells Fargo and is discussed *infra*.

Venue for the chapter 7 case and the proceedings on the motion to dismiss is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background[3]

The basic factual allegations in this adversary proceeding are not complicated. The nub of Anchieta's claim is that he purchased the Middlecamp Road Property[4] from its prior owner, Doresca, in an all-cash transaction[5] and took title free of the mortgage held by Wells Fargo. Anchieta does not challenge the validity of the mortgage which was recorded in the

---

[3] The facts stated are taken from the Complaint, unless otherwise noted, and are accepted as true for the purposes of Wells Fargo's motion to dismiss the Complaint under Rule 12(b)(6). *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition to the allegations in the Complaint, the Court has also considered Anchieta's factual allegations in his opposition to the motion to dismiss and in his sur-reply. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." (citation omitted)); *Small v. Ortlieb*, No. 10-CV-1616 (CBA)(SMG), 2012 WL 3229298, at *1 (E.D.N.Y. Aug. 6, 2012) ("[A]s part of this [c]ourt's duty to construe *pro se* pleadings liberally, the [c]ourt will take account of all the facts contained in both [plaintiff's] amended complaint and his opposition papers." (citation omitted)). References to the allegations in the Complaint, the opposition and the sur-reply should not be construed as a finding of fact by the Court, and the Court makes no such findings.

Additionally, to the extent Wells Fargo moves to dismiss the Complaint under Rule 12(b)(1), the Court has considered the declarations and exhibits submitted by Wells Fargo. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside of the pleadings."). Further, "in considering a motion to dismiss pursuant to Rule 12(b)(5) . . . a Court must look to matters outside the complaint to determine whether it has jurisdiction." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002).

[4] The Middlecamp Road Property is not Anchieta's residence. According to the petition and schedules filed by Anchieta in his bankruptcy case, he resides at 253 Essex Street, Apt. 2R, Brooklyn, NY 11208. [Bankr. Dkt. No. 1].

[5] The contract of sale, dated May 29, 2020, attached as an exhibit to Anchieta's opposition to the motion to dismiss, lists the purchase price for the Middlecamp Road Property as $450,000 cash, of which $250,000 was deposited upon signing of the contract and the balance of $200,000 paid at closing. [Dkt. No. 29-5].

Nassau County Clerk's office on August 15, 2007. Rather, Anchieta alleges that after contracting to purchase the Middlecamp Road Property, he relied on two title reports which he asserts did not show any mortgage or other encumbrance held by Wells Fargo or any notice of pendency filed against the Middlecamp Road Property. Anchieta also claims to have relied upon a satisfaction of mortgage recorded in the Nassau County Clerk's Office on March 3, 2017. [Dkt. No. 1-3]. According to Anchieta, his alleged lack of notice of the claimed interest of Wells Fargo leads to the conclusion that he is a bona fide purchaser/encumbrancer for value and the Middlecamp Road Property is not subject to the Wells Fargo mortgage.

The pertinent allegations set forth in the Complaint, the opposition to the motion to dismiss and the sur-reply, however, do not tell the whole story of the dispute which Anchieta seeks to resolve in this declaratory judgment action, nor do they take into account the long litigation history surrounding the Middlecamp Road Property. To place this dispute in its proper context, the Court will set forth certain factual background based on documents which the Court may properly consider in ruling on a motion to dismiss and any matter of which the Court may take judicial notice.

## A. Foreclosure Proceedings

The story begins with a note and mortgage covering the Middlecamp Road Property executed and delivered by Carla Desrouilleres ("Desrouilleres") on August 1, 2007. [Dkt. No. 26, Ex. C]. Desrouilleres defaulted on her payment obligations in or about February of 2008. *Id.* HSBC Bank USA, National Association, as Trustee for WFMBS 2007-14 ("HSBC") commenced a foreclosure action in May of 2008 ("Foreclosure Action") in the Supreme Court of the State of New York, County of Nassau ("State Court"). [*Id.*] HSBC was granted default judgment against the named defendants, Desrouilleres, Mortgage Electronic Registration Systems, Inc. as nominee for Magnus Financial Corporation, Doresca, and Shatek King.

Thereafter, HSBC obtained a judgment of foreclosure and sale, dated December 12, 2008, and entered December 17, 2008 (the "Judgment of Foreclosure and Sale"). [*Id.*, Ex. A].

On or about January 22, 2009, Doresca filed a separate State Court action against Desrouilleres, alleging that she and Desrouilleres had an oral agreement concerning ownership of the Middlecamp Road Property (the "Title Action"). [*Id.*, Ex. C]. Neither Wells Fargo nor HSBC was named in the Title Action. Doresca filed an Order to Show Cause in the Title Action seeking a stay of the Foreclosure Action. By order dated August 13, 2009, the Hon. F. Dana Winslow stayed the Foreclosure Action and the sale of the Middlecamp Road Property. [*Id.*, Ex. B]. On January 30, 2013, Justice Winslow granted a default judgment in favor of Doresca in the Title Action which provided that Doresca holds title to the Middlecamp Road Property free and clear of any rights, claims or interests of Desrouilleres. [*Id.*, Ex. I]. The default judgment entered in the Title Action was amended on April 11, 2013 ("Amended Title Action Order") to expressly provide that the Middlecamp Road Property remained subject to HSBC's mortgage. [*Id.*, Ex. B]. The Amended Title Action Order also lifted the stay of the foreclosure sale of the Middlecamp Road Property that was imposed on August 13, 2009, and authorized the sale to proceed. [*Id.*]

In May 2013, Doresca sought to intervene in the Foreclosure Action, even though she was already a party pursuant to the Order of Reference and Judgment of Foreclosure and Sale, and asked, for the second time, to stay the Foreclosure Action. Justice Winslow issued an order, dated September 15, 2013 ("Sept. 2013 Order"), denying all relief sought by Doresca finding that all her contentions to be without merit. [*Id.*, Ex. C]. Undeterred, on October 29, 2013, Doresca filed another Order to Show Cause which the State Court refused to sign. [*Id.*, Ex. D]. The state appeals court also denied Doresca's motion to stay all foreclosure proceedings and sale pending Doresca's appeal of the State Court's Sept. 2013 Order. [*Id.*]

On March 4, 2014, the State Court again refused to sign an order to show cause seeking to stay the foreclosure proceedings. [*Id.*]

On August 21, 2014, Doresca filed an Order to Show Cause in State Court seeking an order (i) vacating the Judgment of Foreclosure and Sale, (ii) dismissing the complaint in the Foreclosure Action and cancelling the Notice of Pendency, (iii) granting a temporary restraining order and staying the foreclosure sale and warrant of eviction, and (iv) setting aside Doresca's default in the Foreclosure Action and allowing Doresca to file an answer. [*Id.*] On November 13, 2014, Justice Winslow entered an order ("Nov. 2014 Order") finding that the State Court's prior Order of Reference, Judgment of Foreclosure and Sale, the Amended Title Action Order, and the Sept. 2013 Order all constitute "law of the case" and Doresca's Order to Show Cause were "in all material respects identical to the relief . . . sought with her prior applications." [*Id.*] In addition to denying Doresca's Order to Show Cause, Justice Winslow also directed that "Doresca shall be enjoined from making any further applications in this matter without leave of the Court, and if any such applications are made without the Court's consent, the Court will clearly be inclined to award sanctions, costs and attorney's fees to plaintiff." [*Id.*]

## B. Doresca's Bankruptcy Proceedings

Thereafter, a foreclosure sale of the Middlecamp Road Property was scheduled for February 10, 2015. Doresca appealed the State Court's Nov. 2014 Order and sought another stay of the foreclosure proceeding from the state appellate court. On Feb. 6, 2015, the state appellate court denied Doresca's request for a stay. Barred from filing any application in State Court to stay the scheduled foreclosure sale without first obtaining leave of the State Court and unable to obtain a stay from the state appellate court, Doresca filed a petition for relief under chapter 7 of the Bankruptcy Code on February 9, 2015, Case No. 8-15-70486-las. The bankruptcy filing automatically stayed the foreclosure sale pursuant to 11 U.S.C.

§ 362(a).[6] Doresca was granted a discharge in her chapter 7 case on July 15, 2015, and the case was closed the same day.

After the closing of her chapter 7 case, a foreclosure sale was scheduled for October 6, 2015. With a sale of the Middlecamp Road Property looming, Doresca filed a petition for relief under chapter 13 of the Bankruptcy Code on September 29, 2015, Case No. 8-15-74157-las, which invoked the automatic stay under § 362(a) and the foreclosure sale once again was stayed. On October 6, 2015, Doresca filed an adversary proceeding in this Court against Wells Fargo and HSBC seeking a determination that she owned the Middlecamp Road Property free of any claimed mortgage interest of Wells Fargo. On November 19, 2015, the chapter 13 trustee moved to dismiss Doresca's chapter 13 case. The motion was granted on May 16, 2016, and the chapter 13 case was dismissed. Additionally, an order dismissing the adversary proceeding was issued on June 10, 2016, and the bankruptcy case was closed.

On June 3, 2016, Doresca filed a motion to reopen her prior chapter 7 case to collaterally attack the Judgment of Foreclosure and Sale, which Wells Fargo and HSBC opposed. The motion to reopen was denied by order dated August 18, 2016. Doresca appealed this Court's decision and ultimately, pursuant to an order dated February 28, 2017, the U.S. District Court for the Eastern District of New York dismissed Doresca's appeal with prejudice.

After the denial of Doresca's motion to reopen her chapter 7 case, a foreclosure sale of the Middlecamp Road Property was scheduled for November 1, 2016. With a sale of the Middlecamp Road Property once again looming, Doresca filed a chapter 7 bankruptcy petition on October 25, 2016, Case No. 8-16-75006-las. This, her third bankruptcy filing, implicated

---

[6] All statutory references to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., will hereinafter be referred to as "§ (section number)."

the automatic stay under section § 362(a) and once again the foreclosure sale of the Middlecamp Road Property was stayed. She voluntarily converted her chapter 13 case to a chapter 7 case on January 6, 2017, even though she was not eligible for another chapter 7 discharge. 11 U.S.C. § 727(a)(8).

On March 6, 2017, Doresca filed an adversary proceeding in this Court against HSBC under Adversary Proceeding No. 8-17-08019-las, seeking a determination that HSBC did not hold the underlying note, that the deed of trust and note be declared void and unenforceable, and that HSBC does not have a valid lien against the Middlecamp Road Property. HSBC filed a motion to dismiss the complaint in its entirety.

On August 24, 2017, HSBC filed a motion seeking *in rem* relief from the automatic stay imposed under § 362(a) to prevent any future bankruptcy filings from operating as a stay of any action against the Middlecamp Road Property for a period of two years. Doresca opposed the relief sought. After a hearing, this Court granted HSBC's motion for *in rem* stay relief against the Middlecamp Road Property for a period of two years by order dated October 11, 2017 ("In Rem Order").

On November 12, 2019, one month after the In Rem Order expired, Doresca filed yet another bankruptcy petition, Case No. 8-19-77714-las, notwithstanding her 2016 bankruptcy case remains pending. The Court issued an Order on December 13, 2019, dismissing Doresca's 2019 bankruptcy case.

At a hearing before this Court on January 7, 2020, Doresca, represented by counsel, moved to voluntarily dismiss her adversary proceeding against HSBC and Wells Fargo. An order dismissing the adversary proceeding was issued on January 8, 2020, and the adversary proceeding was closed. Nevertheless, Doresca's 2016 bankruptcy case remained open to deal with a separate adversary proceeding regarding another parcel of real property.

8

**C. State Court Finding of Fraudulent Filings by Doresca**

Following a four-day trial held in January of 2020, the State Court in the Foreclosure

Action issued a judgment, dated October 15, 2020 and entered October 19, 2020 ("Oct. 2020

Judgment") which provided in relevant part as follows:

> Pursuant to the documentary evidence, the witness testimony, the proof of the numerous crimes committed by Defendant Daphnee Doresca, and the decision rendered by this [State] Court on January 31, 2020, the Court determines the following: (i) the alleged Mortgage Satisfaction, which was recorded by the Nassau County Clerk on March 3, 2017 under Document Number 2017-00022943 in Book S, Volume 6741, Page 575, is invalid, as it was fraudulently filed by Defendant Doresca, and is hereby cancelled from the records of the Nassau County Clerk, (ii) the alleged Assignment of Mortgage from HSBC Bank USA, National Association as Trustee for WFMBS 2007-14 to Asset Recovery 24, LLC, which was recorded by the Nassau County Clerk on December 14, 2016 under Document Number 2016-00124536, Book M, Volume 41755, Page 755, is invalid, as it was fraudulently filed by Defendant Doresca, and is hereby cancelled from the records of the Nassau County Clerk . . . .

[Dkt. No. 26, Ex. E]. Having so found, the State Court ordered and adjudged that the Nassau

County Clerk cancel (i) the Mortgage Satisfaction, which was recorded by the Nassau County

Clerk on March 3, 2017 under Document Number 2017-00022943 in Book S, Volume 6741,

Page 575 ("Fraudulent Satisfaction") and (ii) the alleged Assignment of Mortgage from HSBC

to Asset Recovery 24, LLC, which was recorded by the Nassau County Clerk on December

14, 2016 under Document Number 2016-00124536, Book M, Volume 41755, Page 755

("Fraudulent Assignment"). [*Id.*] The State Court also ordered that "based upon her

fraudulent filings, Defendant Daphne Doresca is hereby enjoined from filing any additional

litigation and/or making any further application in this matter that would hinder [HSBC]'s

right to sell the subject property at foreclosure auction." [*Id.*]

**D. Transfer of the Middlecamp Road Property and State Court Rulings Concerning Anchieta's Alleged Interest in the Middlecamp Road Property**

After the trial in State Court in January 2020 and before entry of the State Court Oct. 2020 Judgment,[7] and unbeknownst to HSBC and the bankruptcy trustee in Doresca's chapter 7 case, Doresca allegedly sold the Middlecamp Road Property to Anchieta in an all-cash transaction for $450,000. Having purportedly taken title to the Middlecamp Road Property, Anchieta filed a motion in the Foreclosure Action for entry of an order granting leave to renew the State Court Oct. 2020 Judgment. In his motion, Anchieta sought a declaration that he holds title to the Middlecamp Road Property free of all encumbrances, including any mortgage lien. [Dkt. No. 26, Ex. F]. By order dated October 6, 2022, the State Court denied Anchieta's motion to renew ("Order Denying Motion to Renew"), determining in relevant part:

> Anchieta now seeks a declaration that he holds title to the Property free of all encumbrances. Anchieta claims that he commenced a purchase of the Property on June 29, 2020, that he retained a title company to conduct a title search, and that the title report dated August 17, 2020 showed no open mortgages, judgments or liens.
>
> At the outset it must be noted that, taken as a motion for leave to renew, same is wholly defective inasmuch as Anchieta is not a party to the instant action and did not participate in any way with respect to the October 19, 2020 Order from which he seeks relief.
>
> "When, as here, a notice of pendency is filed, a purchaser is charged with constructive notice of litigation if he fails to record the deed prior to the filing of the notice of pendency" (*Goldstein v. Gold*, 106 A.D.2d 100 [2d Dept 1984]). "A person whose conveyance or incumbrance is recorded after the filing of the notice is bound by all proceedings taken in the action after such filing to the same extent as if he were a party" (CPLR 6501).
>
> Despite the existence of the fraudulent Satisfaction of Mortgage, the Notice of Pendency and Judgment of Foreclosure and Sale

---

[7] Despite the alleged transfer of title, the Middlecamp Road Property remains listed as Doresca's address of record in her bankruptcy case.

> were both entered in 2008 and therefore Anchieta is bound by these proceedings and took title subject thereto. (*Goldstein, supra.*). Therefore, procedural defects notwithstanding, the motion is, in any event, without merit."

[*Id.*] On November 1, 2022, Anchieta filed a notice of appeal of the Order Denying Motion to Renew. [Dkt. 26, Ex. G].

A foreclosure sale of the Middlecamp Road Property was scheduled for January 23, 2023. Anchieta filed an Order to Show Cause in the Foreclosure Action and sought a stay of the January 23, 2023 foreclosure sale. On January 19, 2023, the State Court entered an Order to Show Cause scheduling a hearing for February 22, 2023, but declined to enter a stay of the foreclosure sale. [*Id.*, Ex. H].

### E. Anchieta's Bankruptcy Case and Adversary Proceeding

#### 1. Background

Facing a foreclosure sale of the Middlecamp Road Property on January 23, 2023, and having failed in his effort to obtain a stay of the sale from the State Court, Anchieta filed a petition for relief under chapter 7 of the Bankruptcy Code on January 20, 2023, Case No. 1-23-40181-nhl.[8] The filing of the bankruptcy petition invoked the automatic stay under § 362(a) and the scheduled foreclosure sale was thereupon stayed.

On February 7, 2023, Anchieta commenced this adversary proceeding against Wells Fargo[9] by filing the Complaint in which he seeks the same relief he was denied in State Court, to wit, a declaration that he holds title to the Middlecamp Road Property free and clear of the mortgage asserted by Wells Fargo. [Dkt. No. 1]. On the same date, the Court issued a summons ("Summons") directing that an answer or responsive pleading must be filed by March 9, 2023. [Dkt. No. 2]. Anchieta served the Summons and Complaint by mail on counsel

---

[8] Upon filing, the chapter 7 case was assigned to Bankruptcy Judge Lord, sitting in Brooklyn. As noted below, the chapter 7 was subsequently reassigned to this Court by Order entered on April 14, 2023. [Bankr. Dkt. No. 33].

[9] Wells Fargo is the current holder of the note and mortgage at issue. [Bankr. Dkt. No. 27].

for Wells Fargo on March 2, 2023, five days before the deadline to file an answer or responsive pleading. [Dkt. No. 7]. On April 11, 2023, Anchieta filed a motion seeking entry of a certificate of default of Wells Fargo. [Dkt. No. 8].

In the meantime, on March 2, 2023, Wells Fargo filed a motion in the main bankruptcy case seeking immediate and prospective, i.e., *in rem*, relief from the automatic stay with respect to the Middlecamp Road Property pursuant to § 362(d)(1), (d)(2), and (d)(4) ("Stay Relief Motion") [Bankr. Dkt. No. 27]. The Stay Relief Motion was returnable before Bankruptcy Judge Lord on March 30, 2023. Anchieta filed a letter on March 21, 2023 requesting an adjournment of the March 30, 2023 hearing date on the Stay Relief Motion to May 30, 2023 to allow him to retain counsel and file opposition papers. [Bankr. Dkt. No. 28]. Anchieta thereafter modified his request and sought to adjourn the hearing on the Stay Relief Motion to April 30, 2023. [Bankr. Dkt. No. 29]. Bankruptcy Judge Lord held a hearing on March 30, 2023 at which counsel for Wells Fargo and Anchieta, proceeding *pro se*, appeared. No determination was made on the merits of the Stay Relief Motion as the parties were advised that the chapter 7 case would be reassigned to this Court given the relationship to Doresca's pending chapter 7 case and the claims surrounding the Middlecamp Road Property.

On April 14, 2023, Anchieta's chapter 7 case and the adversary proceeding were reassigned. [Bankr. Dkt. No. 33]. On May 11, 2023, this Court held a status conference in the main bankruptcy case and a pretrial conference in the adversary proceeding. The Court thereafter entered a scheduling order setting forth a briefing schedule for Wells Fargo's motion to dismiss. [Dkt. No. 21]. In accordance with the scheduling order and as described below, Wells Fargo moved to dismiss the Complaint on various grounds, including the claims asserted are precluded by prior decisions of the State Court. [Dkt. Nos. 24-26]. In response, Anchieta filed opposition to the motion to dismiss and cross-moved for entry of a default

judgment asserting that Wells Fargo failed to timely respond to the Complaint. [Dkt. Nos. 28-30]. Wells Fargo filed a reply. [Dkt. No. 31]. Anchieta filed a sur-reply. [Dkt. No. 33].

On August 13, 2024, a hearing to consider the relief requested in the Stay Relief Motion was held before this Court. On August 16, 2024, consistent with the Court's findings at the conclusion of the August 13, 2024 hearing, the Court entered an Order (i) granting Wells Fargo relief from the automatic stay under § 362(d)(1) and (d)(2), and (ii) adjourning its request for *in rem* stay relief to a date to be determined by the Court. [Bankr. Dkt. No. 65].  On October 1, 2024, the Court entered an Order scheduling a continued hearing on Wells Fargo's request for *in rem* stay relief. [Bankr. Dkt. No. 67].  On October 22, 2024, a hearing was held before the Court at which counsel for Wells Fargo and Anchieta, proceeding *pro se*, appeared.[10] By Order dated October 24, 2024, the Court granted *in rem* stay relief with respect to the Middlecamp Road Property. [Bankr. Dkt. No. 70]. Anchieta did not appeal the stay relief orders and the time to do so has long since expired.

### 2.  Anchieta's Complaint

The Complaint asserts two claims. Count One seeks a declaratory judgment that Anchieta owns the Middlecamp Road Property free and clear of any lien asserted by Wells Fargo because he is a "bona fide purchaser/encumbrancer" of the Middlecamp Road Property and Count Two claims that Anchieta is an innocent purchaser who relied upon a recorded satisfaction of mortgage and thus took title free and clear of the asserted lien of Wells Fargo.

According to Anchieta, he commenced the purchase of the Middlecamp Road Property on June 20, 2020. Compl. at 3, ¶ 12. He alleges that on August 14, 2020, prior to closing, he retained Pro Title USA, Nationwide, and Cali Title Search to conduct a title search on the

---

[10] Despite his requests to adjourn the Stay Relief Motion to retain counsel, Anchieta has not retained counsel in his bankruptcy case or this adversary proceeding.

Middlecamp Road Property. *Id.* ¶ 13. On August 17, 2020, after the scheduled closing date for payment of the balance of the purchase price, Pro Title USA, Nationwide Title, and Cali Title Search completed a title search report. *Id.* ¶ 14, Exs. A, B. Anchieta alleges that the title search report showed no open mortgages, judgments or liens encumbering the Middlecamp Road Property nor any *lis pendens* properly indexed against the property which would serve to give constructive notice. *Id.* ¶ 15. Anchieta further alleges that a satisfaction of mortgage was recorded with respect to the Middlecamp Road Property. *Id.,* Ex. C. Anchieta claims he relied on the validity of the recorded satisfaction of mortgage and a clean title report and paid the purchase price together with all necessary transfer taxes to acquire the Middlecamp Road Property. *Id.* at 4 ¶ 16, at 9, ¶ 13. According to Anchieta, on September 3, 2020, a bargain and sale deed was duly recorded in the Office of the Clerk of Nassau County, evidencing his purchase of the Middlecamp Road Property. *Id.* at 4, ¶ 19. Anchieta alleges that absent proof of actual notice of the filing and indexing of a *lis pendens* against the Middlecamp Road Property, he took title without constructive or actual notice of pending claims and is not bound by any judgment rendered on those claims. *Id.* at 8, ¶ 9.

In support of his factual allegations, Anchieta attaches and references (i) as Exhibit A, a title report by Pro Title USA, Nationwide, dated August 17, 2020, with no information as to who prepared the report, (ii) as Exhibit B, an unsigned title report by California Title Search Co. dated August 17, 2020, again with no indication of who individually prepared the report, and (iii) as Exhibit C, the satisfaction of mortgage that the State Court declared was fraudulently filed by Doresca and subsequently cancelled of record. Further, despite the allegation that he purchased the Middlecamp Road Property pursuant to a bargain and sale

14

deed dated June 20, 2020, no such deed nor the purported contract of sale between Doresca and Anchieta is attached to the Complaint.[11]

### 3. Wells Fargo's Motion to Dismiss

Wells Fargo seeks to dismiss the Complaint pursuant to (i) Rule 12(b)(1) for lack of subject matter jurisdiction, (ii) Rule 12(b)(2) and (b)(5) for lack of personal jurisdiction based on insufficient service of process, (iii) Rule 12(b)(6) for failure to adequately state any claim because *res judicata* and collateral estoppel bar the claims; and (iv) the abstention doctrines established in *Younger* and *Colorado River*. [Dkt. No. 25].

### a. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Wells Fargo contends this Court lacks subject matter jurisdiction because Anchieta's claims are barred under the *Rooker-Feldman* doctrine.[12] According to Wells Fargo, Anchieta's request for declaratory judgment that he is a bona fide purchaser for value of the Middlecamp Road Property concerns issues inextricably related to the Judgment of Foreclosure and Sale. Wells Fargo argues that the Complaint is a *de facto* appeal of the Judgment of Foreclosure and Sale, that Anchieta's claims were conclusively determined by entry of that judgment, and the *Rooker-Feldman* doctrine deprives this Court of jurisdiction to review the State Court's adjudication.

Alternatively, should this Court determine that the *Rooker-Feldman* doctrine does not apply, Wells Fargo maintains that this Court should decline to exercise its subject matter jurisdiction over this adversary proceeding under the abstention doctrine set forth in *Younger* as doing so would interfere with an ongoing state court proceeding. Wells Fargo argues that

---

[11] A copy of a purported contract of sale between Doresca and Anchieta, dated May 29, 2020, is filed as an exhibit to Anchieta's cross-motion for entry of default judgment and opposition to the motion to dismiss. [Dkt. No. 29-5].

[12] The *Rooker-Feldman* doctrine is derived from two Supreme Court cases. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). That portion of the motion to dismiss based on the *Rooker-Feldman* doctrine is considered under Rule 12(b)(1) as it is a challenge to this Court's subject matter jurisdiction. *See Redmond v. Bank of N.Y. Mellon Corp.*, 697 F. App'x 23, 24 (2d Cir. 2017) (citing *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014)).

the abstention doctrine set forth in *Colorado River* also applies because this adversary proceeding is parallel to the pending State Court Foreclosure Action.

### b. Rule 12(b)(2) and (b)(5): Insufficient Service of Process and Lack of Personal Jurisdiction

Wells Fargo argues that the Complaint should be dismissed pursuant to Rules 12(b)(2) and (b)(5) for insufficient service of process and lack of personal jurisdiction because Anchieta's service of the Summons and Complaint was facially defective. The Summons was issued by the Clerk's Office on February 7, 2023 and pursuant to Bankruptcy Rule 7004, Anchieta needed to deposit the Summons and Complaint in the mail within 7 days after the Summons was issued. Anchieta did not attempt to serve Wells Fargo by mail until March 2, 2023, well after the seven-day service period had expired. Anchieta never obtained another summons to effectuate timely service. Accordingly, Anchieta attempted service with a stale Summons, service was never completed, and personal jurisdiction over Wells Fargo was never obtained. While Bankruptcy Rule 7004(e) provides that "[i]f a summons is not timely delivered or mailed, another summons will be issued for service", Wells Fargo contends that the Court should not exercise its discretion under Rule 4(m) and extend the time for effectuating service because Anchieta's failure to properly serve Wells Fargo with the Summons and Complaint was willful. Wells Fargo had informed Anchieta of his defective service and was willing to accept service if Anchieta agreed to extend Wells Fargo's time to respond to the Complaint. Anchieta refused and sought entry of a default judgment against Wells Fargo when it was Anchieta who failed to serve Wells Fargo on a timely basis and thus personal jurisdiction over Wells Fargo was never obtained. Wells Fargo also argues that the Complaint should be dismissed because of Anchieta's failure to proceed in good faith.

### c.  Rule 12(b)(6): Failure to State a Claim

Lastly, to the extent the *Rooker-Feldman* doctrine does not deprive this Court of jurisdiction to review the State Court adjudication, Wells Fargo moves to dismiss the Complaint because all of Anchieta's claims are barred by the doctrines of *res judicata* and collateral estoppel. Wells Fargo maintains that Anchieta had a full and fair opportunity to litigate the issues raised in the Complaint before the State Court in the Foreclosure Action when he filed and argued his motion to renew the Oct. 2020 Judgment. Wells Fargo contends that Anchieta's claimed reliance on the Fraudulent Satisfaction is not outcome-determinative because (i) the State Court held in its Oct. 2020 Judgment that both the satisfaction of mortgage and the assignment of mortgage were fraudulently created and recorded by Doresca, and were thus invalid, (ii) the Fraudulent Satisfaction and Fraudulent Assignment were the products of fraud, and are void *ab initio* and Anchieta cannot claim reliance on fraudulent instruments as a matter of law, and (iii) the State Court held in its Order Denying Motion to Renew, dated October 6, 2022, that Anchieta took title to the Middlecamp Road Property subject to the Judgment of Foreclosure and Sale and he cannot now maintain this separate action to re-litigate issues and claims that were previously decided by the State Court in the Foreclosure Action.

### 4.  Anchieta's Opposition and Cross-Motion for Default Judgment

In addressing service of the Summons and Complaint, Anchieta alleges that when his bankruptcy case was filed, the Clerk's Office incorrectly entered 252 Essex Street, Apt. 2, Brooklyn NY 11208 as his address and that the Summons was mailed to him at that address. He asserts that he filed a notice of change of address and the Clerk's Office mailed another summons to him without changing the date it was issued. He contends that he did not receive the new summons until February 27, 2023, and he served the Summons and Complaint on

March 2, 2023. He also argues that he served the Summons that was issued to him within 120 days of the filing of the Complaint as provided by Rule 4(m).[13]

Further, because a notice of appearance was filed in the main bankruptcy case on behalf of Wells Fargo by Gross Polowy, LLC on January 30, 2023, Anchieta argues that when he filed the Complaint on February 7, 2023, the Court's system automatically generated an electronic filing notice. He claims the electronic notice constituted service of the Summons and Complaint upon Wells Fargo. He also alleges that on February 7, 2023, the Clerk's Office filed a certificate of mailing of the Summons and Complaint to Wells Fargo's attorney through the mailing matrix. He maintains that such notice establishes that he timely and properly effected service upon Wells Fargo. Although Wells Fargo's counsel in this adversary proceeding, Reed Smith, did not file a notice of appearance in the main bankruptcy case, Anchieta argues that Wells Fargo nonetheless received notice by electronic service and regular mail. Anchieta also argues that this District's Local Rule 5.2(A) permits service of a summons and complaint by electronic means.[14] Anchieta further argues that because Wells Fargo's counsel received actual notice of the adversary proceeding, Wells Fargo did not suffer any prejudice by any claimed defective in service.

Because Anchieta insists that he effected proper and timely service of the Summons and Complaint, he maintains that Wells Fargo's motion to dismiss is not properly before this Court. He avers that Wells Fargo's defaulted by failing to timely answer or otherwise respond to the Complaint and the Court must note the default. Anchieta contends that Wells Fargo

---

[13] Rule 4(m), made applicable here by Bankruptcy Rule 7004, provides that service must be made within 90 days after the complaint is filed. If a defendant is not timely served and plaintiff cannot show "good cause" as to why service could not be made within the 90-day time frame, the court must dismiss the action without prejudice or, in its discretion, direct that service be accomplished within a new specified period. Rule 4 was amended in 2015 to reduce the 120-day period to 90 days.

[14] E.D.N.Y. Local Bankruptcy Rule 9036-2 applies to bankruptcy cases and proceedings in this Court and governs service by electronic means and expressly provides in subparagraph (c) that paper copies of documents or notices must be served in accordance with Bankruptcy Rule 7004 which governs service of a summons and complaint in an adversary proceeding.

would need to vacate the default before the motion to dismiss may be considered by the Court. Anchieta argues that to the extent the motion to dismiss is deemed a motion to vacate the default, Wells Fargo did not address the grounds for vacating a default. Accordingly, Anchieta argues that he is entitled to have Wells Fargo's default entered under Rule 55, as made applicable to this adversary proceeding by Bankruptcy Rule 7055.[15]

Addressing the substance of the motion to dismiss, Anchieta argues that he was not a defendant in the Foreclosure Action and was not aware of the Foreclosure Action or entry of the Judgment of Foreclosure and Sale. He claims that he did not have actual or constructive notice of any interest of Wells Fargo in the Middlecamp Road Property because the title reports did not show any judgment of foreclosure and sale, mortgage, or *lis pendens* recorded or indexed under the section, block and lot number of the Middlecamp Road Property. Anchieta claims he signed the contract of sale to purchase the Middlecamp Road Property on May 20, 2020, and paid the $450,000 purchase price in cash. He argues that he recorded the deed in August 2020 and is a bona fide purchaser for value because the Oct. 2020 Judgment declaring both the mortgage satisfaction and assignment fraudulent and invalid was entered months after he closed on the purchase of the Middlecamp Road Property.

Anchieta next argues that the *Rooker-Feldman* doctrine does not apply because (i) he was not a party to the Foreclosure Action, (ii) he is not complaining of injuries caused by the Judgment of Foreclosure and Sale, and (iii) he is not inviting this Court to review and reject the Judgment of Foreclosure and Sale. He argues that he has an independent federal claim, and he did not have a reasonable opportunity to raise his federal claim in the Foreclosure Action and that it was not adjudicated by the State Court.

---

[15] The Court notes that Anchieta did not properly notice for a hearing his self-styled cross-motion for entry of a default and the cross-motion was made as a part of his opposition to the motion to dismiss and not as a separate motion.

Similarly, Anchieta argues that the doctrine of *res judicata* does not apply because he was not aware of, nor party to, the Foreclosure Action. The acquisition of the Middlecamp Road Property, which he asserts is the basis for his federal claim, occurred years after entry of the Judgment of Foreclosure and Sale and the Judgment of Foreclosure and Sale did not appear in the title reports. As for the doctrine of collateral estoppel, Anchieta argues that (i) Wells Fargo has not specified what issues it believes are identical in the Complaint and in the Foreclosure Action, and (ii) even if there is an identity of issues, he contends that Wells Fargo has not demonstrated that the issues raised in the Foreclosure Action were "fully litigated." He argues that his federal claim was never litigated, and he has never been involved in any prior proceedings with Wells Fargo and no prior determination resolving his claims has been made in any prior litigation. Similarly, he argues that abstention under the *Younger* doctrine does not apply because he has never been a defendant in any state court action and no judgments were rendered against him in favor of Wells Fargo in any state court action. Additionally, he claims there is also no parallel state court action between Wells Fargo and him that implicates his federal claims, and a stay of his federal action does not apply under the *Colorado River* abstention doctrine.

The Court notes that nowhere in Anchieta's papers does he address the State Court's October 6, 2022 Order denying his motion to renew the Oct. 2020 Judgment in which the State Court found that both the mortgage satisfaction and assignment were fraudulent and thus invalid. In his motion to renew, Anchieta raised the very same argument that he now presents to this Court, to wit, that he acquired the Middlecamp Road Property free of any claimed interest of Wells Fargo because he is a bona fide purchaser. That argument failed as the State Court ruled in its Order Denying Motion to Renew that Anchieta was subject to the Judgment of Foreclosure and Sale and the notice of pendency.

### 5. **Wells Fargo's Reply**

Wells Fargo contends that the adversary proceeding is an improper collateral attack on the final determination made by the State Court in the Foreclosure Action, including the State Court's denial on October 6, 2022 of Anchieta's post-judgment motion seeking the same relief requested in this adversary proceeding. The State Court determined that Anchieta was *not* a bona fide purchaser for value of the Middlecamp Road Property and took subject to the Judgment of Foreclosure and Sale and the notice of pendency. Wells Fargo notes that Anchieta filed (i) a notice of appeal of the October 6, 2022 Order Denying Motion to Renew and (ii) an Order to Show Cause which remains pending in State Court.[16]

Wells Fargo next argues that although Anchieta asserts that his bona fide purchaser claim is independent of the Foreclosure Action and Judgment of Foreclosure and Sale, that claim is inextricably related to the Judgment of Foreclosure and Sale which remains valid. Thus, Anchieta cannot claim independence from the Foreclosure Action and the Judgment of Foreclosure and Sale, while seeking to nullify their effect. This, Wells Fargo states, is evident by the fact that Anchieta has already twice sought a determination from the State Court presiding over the Foreclosure Action that his interest in the Middlecamp Road Property was not subject to the Judgment of Foreclosure and Sale – first, in his motion to renew which was denied, *see* October 6, 2022 Order Denying Motion to Renew, and second, in his pending Order to Show Cause in which the State Court declined to issue a temporary restraining order to stay the scheduled foreclosure sale. Wells Fargo points out that Anchieta's chapter 7 bankruptcy case was filed to invoke the automatic stay because the State Court declined to stay the scheduled foreclosure sale.

---

[16] As noted above, a foreclosure sale of the Middlecamp Road Property was scheduled for January 23, 2023. Anchieta filed an Order to Show Cause in the Foreclosure Action and sought a stay of the January 23, 2023 foreclosure sale. On January 19, 2023, the State Court entered an Order to Show Cause scheduling a hearing for February 22, 2023 but declined to enter a stay of the foreclosure sale. [Dkt. No. 26, Ex. H].

Similarly, Wells Fargo notes that Anchieta cannot claim he is not engaged in any state court proceedings with Wells Fargo when it is undisputed that (i) he filed the motion to renew in State Court, (ii) the State Court issued the October 6, 2022 Order denying that motion, and (iii) Anchieta appealed that Order, and also moved by Order to Show Cause in the Foreclosure Action to stop the scheduled foreclosure sale. Wells Fargo points out that it has been litigating the issue of whether Anchieta is a bona fide purchaser and thus exempt from enforcement of the Judgment of Foreclosure and Sale and the mortgage held by Wells Fargo for the past two years.

As for service of process, Wells Fargo asserts that Anchieta admits he did not attempt to serve Wells Fargo by mail until March 2, 2023, well after the seven-day service period had expired, so the Summons was stale and personal jurisdiction over Wells Fargo was never obtained. Wells Fargo notes that Anchieta blames the Bankruptcy Clerk's Office for delaying his receipt of the Summons by mailing a copy of the Summons to the address that Anchieta himself provided in his bankruptcy petition. In short, Wells Fargo asserts that any alleged delay in Anchieta's receipt of the Summons issued February 7, 2023 rests with Anchieta as it was his responsibility – not the Clerks' Office or Wells Fargo's – to provide a current mailing address.

In addition, Wells Fargo asserts that Anchieta's claim that timely and proper service of process was complete upon the Court's electronically generated notice and mailing is completely unfounded. First, contrary to Anchieta's claims, the adversary proceeding docket does not reflect that Wells Fargo or its attorneys were served with the Summons and Complaint either by mail or electronically. Second, court-generated mailings and electronic notices do not constitute service of process under any applicable laws governing service of initial pleadings, including Bankruptcy Rule 7004. Third, at no point has counsel for Wells Fargo "confirmed receipt" of the Summons and Complaint. Fourth, counsel for Wells Fargo

learned of this adversary proceeding while monitoring the main bankruptcy case docket, and counsel's monitoring of the docket does not excuse Anchieta from his duty to complete timely and proper service of process, which he has not done as a matter of law.

Wells Fargo also contends that Anchieta's opposition failed to adequately rebut Wells Fargo's arguments concerning the doctrines of *res judicata* and collateral estoppel. Anchieta's claim in this adversary proceeding that he is a bona fide purchaser is not new as he previously sought twice to intervene in the Foreclosure Action to obtain a ruling that his ownership in the Middlecamp Road Property was unencumbered by the Judgment of Foreclosure and Sale and any claimed interest of Wells Fargo. If Anchieta's claim was truly a new claim, he would not have sought to intervene in the Foreclosure Action and would not have filed an appeal of the October 6, 2022 Order Denying Motion to Renew and moved by Order to Show Cause for a determination on the very same issue in State Court. Accordingly, Wells Fargo avers that Anchieta's interest is encumbered by the Judgment of Foreclosure and Sale, just as Doresca's was, and any issue of the judgment's validity and enforceability against any purchaser from Doresca, *i.e.* Anchieta, have already been determined in actions precipitated by Anchieta himself in State Court.

Lastly, Wells Fargo points out that Anchieta indisputably took title to the Middlecamp Road Property absent a Court order authorizing the sale of the Middlecamp Road Property which constituted property of Doresca's bankruptcy estate. Accordingly, Anchieta cannot now assert that he is a bona fide purchaser because Doresca lacked the legal authority to transfer property of her bankruptcy estate. Thus, Wells Fargo concludes that this unauthorized act alone establishes that Anchieta could *never* demonstrate that he was a bona fide purchaser for value of the Middlecamp Road Property.

### 6. Anchieta's Sur-Reply

Anchieta filed a sur-reply without seeking Court authorization. [Dkt. No. 33]. "It is well-settled that sur-replies are not permitted without court authorization." *Preston Hollow Cap. LLC v. Nuveen Asset Mgmt. LLC*, 343 F.R.D. 460, 465 (S.D.N.Y. 2023) (citing *Kapiti v. Kelly,* No. 07-CV-3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008)). However, because Anchieta is proceeding *pro se*, the Court has considered Anchieta's sur-reply. *See Walker*, 717 F.3d at 122 n.1; *Small*, 2012 WL 3229298 at *1. The arguments raised in the sur-reply are repetitive of Anchieta's central theme that he is a bona fide purchaser because (i) he relied upon the recorded mortgage satisfaction and (ii) he obtained title to the Middlecamp Road Property without actual or constructive notice of the Foreclosure Action, the Judgment of Foreclosure and Sale and the notice of pendency.

### Discussion

### A. Sufficiency of a *Pro Se* Complaint

Anchieta is proceeding *pro se* and his Complaint is therefore held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). While *pro se* complaints "are read liberally and must be interpreted to raise the strongest arguments that they suggest, a pro se complaint must still plead sufficient facts to state a claim to relief that is plausible on its face." *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 274 (S.D.N.Y. 2018) (internal quotation marks, emphasis and citation omitted). "Moreover, 'the court need not accept as true conclusions of law or unwarranted deductions of fact.'" *Id*. (internal quotation marks omitted) (quoting *Whitfield v. O'Connell*, 09 Civ. 1925 (WHP), 2010 WL 1010060, at *4 (S.D.N.Y. Mar. 18, 2010)). In sum, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted and citation omitted).

## B. Rules 12(b)(2) and (b)(5): Insufficient Service of Process and Lack of Personal Jurisdiction

"Objections pursuant to Rule 12(b)(2) concern lack of personal jurisdiction, which results when a summons and complaint have not been served on the defendant pursuant to Rule 12(b)(5)." *Jackson v. City of New York*, No. 14-CV-5755 (GBD) (KNF), 2015 WL 4470004, at *4 (S.D.N.Y. June 26, 2015) (quoting *Anzulewicz v. Nat'l Fuel Gas Supply Corp.*, 208 F.R.D. 47, 49 n.5 (W.D.N.Y. 2002)); *see also Hawthorne v. Citicorp Data Sys., Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) ("Without proper service a court has no personal jurisdiction over a defendant.").

"A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint." *Jackson*, 2015 WL 4470004, at *4 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1353 (3d ed. 2004)). "Once a defendant challenges the sufficiency of service, 'the burden of proof is on the plaintiff to show the adequacy of service.'" *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 658 (S.D.N.Y. 1997).

Bankruptcy Rule 7004 and Rule 4 govern the issuance of a summons and service of the summons and complaint in an adversary proceeding.[17] By contrast, Rule 5, made applicable to adversary proceedings by Bankruptcy Rule 7005, provides for the method of service of pleadings after service of the original complaint. Fed. R. Civ. P. 5(a)(1)(B) and 5(d)(1)(A). "Though courts grant pro se plaintiffs 'special solicitude,' *Hogan v. Fisher*, 738 F.3d 509, 515 (2d Cir. 2013), pro se plaintiffs are not excused from these requirements, *Meilleur v. Strong*, 682 F.3d 56, 61-63 (2d Cir. 2012)." *Trombetta v. Novocin*, 18-CV-993 (RA), 2020 WL 7053301, at *2 (S.D.N.Y. Nov. 24, 2020).

---

[17] Bankruptcy Rule 7004(a) specifies that certain provisions of Rule 4 are applicable to adversary proceedings.

Bankruptcy Rule 7004(b) permits service within the United States by first class mail postage prepaid, in addition to the methods of service authorized by Rule 4(e)-(j), and dictates how service should be made depending on the identity of the defendant. Where the defendant is a domestic corporation, a copy of the summons and complaint must be mailed "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant." Fed. R. Bankr. P. 7004(b)(3).

Service on an insured depository institution, such as a bank, shall be made by certified mail addressed to an officer of the institution, unless:

(1) the institution has appeared by its attorney, in which case the attorney shall be served by first-class mail;

(2) the court orders otherwise after service upon the institution by certified mail of notice of an application to permit service on the institution by first-class mail sent to an officer of the institution designated by the institution; or

(3) the institution has waived in writing its entitlement to service by certified mail by designating an officer to receive service.

Fed. R. Bankr. P. 7004(h).

In terms of timing of service, Bankruptcy Rule 7004(e) provides generally that service

shall be by delivery of the summons and complaint within 7 days after the summons is issued. If service is by any authorized form of mail, the summons and complaint shall be deposited in the mail within 7 days after the summons is issued. If a summons is not timely delivered or mailed, another summons will be issued for service.

Fed. R. Bank. P. 7004(e). As Bankruptcy Rule 7004(e) provides, if a plaintiff is unable to timely serve the summons and complaint within 7 days of the summons being issued, it can request another summons for service. However, the plaintiff's time to properly effectuate service with another summons is not limitless. Pursuant to Rule 4(m), "[i]f the plaintiff fails

to serve a defendant within 90 days of filing the complaint, the action must be dismissed without prejudice unless the plaintiff shows 'good cause'." *Trombetta*, 2020 WL 7053301, at *2 (citing Fed. R. Civ. P. 4(m)). Rule 4(m), made applicable here by Bankruptcy Rule 7004(a), provides that:

> [i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

Here, it is undisputed that (i) the Clerk's Office issued the Summons on February 7, 2023 [Dkt. No. 2], and mailed a copy of the Summons to Anchieta at 252 Essex Street, Apt. 2, Brooklyn, NY 11208 ("252 Essex Street"). [Dkt. No. 3]. The Court takes judicial notice that Anchieta's petition for relief under chapter 7 listed his mailing address as 252 Essex Street. [Bankr. Dkt. No. 1]. Anchieta did not file a notice of change of address from 252 Essex Street to 253 Essex Street, Brooklyn, NY 11208 until February 17, 2023. [Bankr. Dkt. No. 23]. Therefore, the Court's mailing of the Summons to 252 Essex Street was proper at the time it was issued as that was Anchieta's address of record. The Clerk's Office is not obligated to re-issue a summons in an adversary proceeding based upon a change of address made by a debtor in the main bankruptcy case. It is incumbent upon the debtor-plaintiff to request that a new summons be issued. There is no record on the Court's docket that Anchieta requested that another summons be issued for service and, therefore, the Clerk's Office did not issue a second summons. It is also undisputed that Anchieta did not serve the original Summons and Complaint until March 2, 2023, which is well after 7 days of when the Summons was issued. [Dkt. No. 7]. Accordingly, there is and can be no dispute that Anchieta's service of the original Summons and Complaint was untimely under Rule 7004(e).

Anchieta's references to Wells Fargo's receiving notice of electronic filing from the Court's system when the adversary proceeding was filed does not excuse Anchieta's obligation to serve the Summons and Complaint pursuant to Bankruptcy Rule 7004 and Rule 4. While Bankruptcy Rule 9036(b) permits the Clerk's Office to provide electronic notice of papers filed with the Court's electronic filing system to those who have consented to receiving such electronic notice, Bankruptcy Rule 9036(e) specifically states that "[t]his rule does not apply to any paper required to be served in accordance with Rule 7004." Fed. R. Bankr. P. 7036(e). This is reinforced by this Court's Local Bankruptcy Rule 9036-2(c), which provides that notwithstanding consent to notice and service by electronic transmission under Local Bankruptcy Rule 9036-1 and 9036-2(a) and (b), "paper copies of documents or notices shall be served in the following circumstances: (i) service made in accordance with Bankruptcy Rules 7004 and 9016 . . . ." Additionally, as discussed above, how the Summons and Complaint must be served is dictated by Bankruptcy Rule 7004. Anchieta's reference to Local Rule 5.2 does not apply to this Bankruptcy Court as it is a local rule of the U.S. District Court[18]. Thus, Anchieta's reliance upon the Court's electronic notification system for service of the Summons and Complaint is unavailing.

The 90-day period under Rule 4(m) to effectuate proper service expired on May 8, 2023. Anchieta did not request additional time to effectuate service nor sought an expansion of the 90-day period to effectuate service for good cause. Rather, Anchieta moved for entry of default judgment against Wells Fargo when Wells Fargo raised Anchieta's failure to properly effectuate service under Rule 12(b)(5) as a basis for dismissal of the Complaint. Accordingly, the Complaint must be dismissed and Anchieta's cross-motion for default judgment against Wells Fargo must be denied. Although a dismissal for insufficient service under Rule 12(b)(5)

---

[18] *See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

and Rule 4(m) is generally without prejudice and a plaintiff may seek to re-serve the summons and complaint properly, for the sake of completeness, the Court will also consider Wells Fargo's request to dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine and Rule 12(b)(6) on the grounds that the asserted claims are barred by the doctrines of *res judicata* and collateral estoppel.[19]

## C. Rule 12(b)(1): The *Rooker-Feldman* Doctrine and Lack of Subject Matter Jurisdiction

Wells Fargo argues that the *Rooker-Feldman* doctrine divests this Court of jurisdiction over Anchieta's claims. Two Supreme Court decisions, *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 414–15 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). Wells Fargo maintains that this Court cannot sit as an appellate court to review and reject the adverse ruling Anchieta received from the State Court in the Order Denying Motion to Renew, dated October 6, 2022. As noted above, in that decision, despite Anchieta's claim that he is a bona fide purchaser, the State Court concluded that Anchieta was subject to the Judgment of Foreclosure and Sale and the notice of pendency.

"The Supreme Court has explained that *Rooker-Feldman* bars 'a party losing in state court . . . from seeking what in substance would be appellate review of the state judgment in a United States district court.'" *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). "The *Rooker-Feldman* doctrine is confined to cases of the kind from which from which it acquired its name: cases brought by

---

[19] As set forth below, because the Court determines that the Complaint must be dismissed in its entirety as barred by the doctrines of *res judicata* and collateral estoppel, the Court need not, and does not, address the remaining Rule 12(b)(6) arguments raised by Wells Fargo nor whether the Court should decline to hear this adversary proceeding under the abstention doctrines set forth *Younger* and *Colorado River*.

state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). The *Rooker-Feldman* doctrine, however, applies only "after the state proceedings have ended." *Exxon Mobil*, 544 U.S. at 291. "The doctrine 'does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.'" *Hunter*, at 68 (quoting *Exxon Mobil*, 544 U.S. at 284)).

To determine whether the *Rooker-Feldman* doctrine applies, the Second Circuit has established a four-part test. *Id*. at 68-69. *Rooker-Feldman* applies if "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id*. (quoting *Vossbrinck*, 773 F.3d at 426).

While a review of the record shows that the first three prongs of the test are met, to wit, Anchieta (i) lost in State Court, *see* Order Denying Motion to Renew, (ii) complains of injuries caused by that State Court decision, and (iii) asks this Court to review and reject the State Court decision that he is subject to the Judgment of Foreclosure and Sale and the notice of pendency. However, as we learn from *Hunter*, the fourth prong is not met. In *Hunter*, the Second Circuit held that "[i]f a federal-court plaintiff's state-court appeal remains pending when she files her federal suit, the state-court proceedings have not ended and *Rooker-Feldman* does not apply." *Id*. at 70. Here, based on the record placed before the Court, Anchieta filed an appeal from the October 6, 2022 State Court decision denying his motion to renew in which he sought a declaration that he holds title to the Middlecamp Road Property

free and clear of any claimed interest of Wells Fargo. The notice of appeal was filed on November 1, 2022 [Dkt. No. 26, Ex. G], and neither party has asserted that the appeal was not pending at the time Anchieta commenced the adversary proceeding in this Court. Thus, the *Rooker-Feldman* doctrine does not apply to divest this Court of jurisdiction. *Hunter*, at 67-71.

A finding that the state court proceedings have not "ended" for *Rooker-Feldman* purposes does not, however, bar this Court from considering whether Anchieta's Complaint must be dismissed on other grounds, including under the preclusion doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion).

## D.  Rule 12(b)(6): Failure to State a Claim

### 1.  Standard of Review

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) "does not require detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A defendant may move to dismiss a complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* To meet this standard, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In ruling on a Rule 12(b)(6) motion, "the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 113 (2d Cir. 2010) (internal citation and quotation marks omitted). Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Applying this plausibility standard is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCall v. Chesapeake Energy Corp.*, 817 F. Supp. 2d 307, 312 (S.D.N.Y. 2011) (quoting *Iqbal*, 556 U.S. at 679). Although all well-pleaded factual allegations in the complaint are assumed true for purposes of a motion to dismiss, *see Koch*, 699 F.3d at 145, this principle is "inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### 2.  Matters that May Be Considered on a Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6), "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111 (citations omitted); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). For a court to consider a document external to the complaint as "incorporated by reference," there must be a "clear, definite and substantial reference" to the document in the complaint. *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 330–31 (S.D.N.Y. 2003). "A mere passing reference or even references . . . to a document outside of the complaint does not, on its own, incorporate the document into the

complaint itself." *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011). Conversely, "[m]ultiple references to, and lengthy quotations from, an outside document have been considered sufficiently substantial to incorporate the document into the complaint by reference." *Allen v. Chanel Inc.*, No. 12 CV 6758(RPP), 2013 WL 2413068, at *5 (S.D.N.Y. June 4, 2013).

"Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "For a document to be considered integral to the complaint, the plaintiff must 'rel[y] on the terms and effect of a document in drafting the complaint . . . . [M]ere notice or possession is not enough.'" *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (quoting *Chambers*, 282 F.3d at 153). Additionally, "[m]erely mentioning a document in the complaint will not satisfy this standard; indeed, even offering 'limited quotation[s]' from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (citing *Global Network Commc'ns v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006)). Furthermore, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document." *AECOM*, 19 F.4th at 106 (citing *DiFolco*, 622 F.3d at 111) (internal quotations omitted).

A court may also take judicial notice of matters of public record, including documents filed in other court proceedings, when considering a motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991). However, courts may only take judicial

notice of documents from other court proceedings "to establish the fact of such litigation and related filings" and "not for the truth of the matters asserted in the other litigation." *Id.* at 774. Additionally, a court may "take judicial notice of its own orders" and "its own records." *Rosado-Acha v. Red Bull GmbH,* No. 15 Civ. 7620, 2016 WL 3636672, at *7 (S.D.N.Y. June 29, 2016) (citations omitted); *see also Teamsters Nat'l Freight Indus. Negotiating Comm. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. App'x 46, 48 (2d Cir. 2005) (noting that courts are empowered to take judicial notice of public filings, including their dockets); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (electing to take judicial notice of the entire file in the case for sake of completeness, as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

### 3. Res Judicata and Collateral Estoppel

The doctrines of *res judicata* and collateral estoppel "operate to prevent parties from contesting matters that they have had a full and fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." *Marvel Characters, Inc.*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)). The Court may consider a motion to dismiss under the preclusion doctrines of *res judicata* and collateral estoppel under Rule 12(b)(6). *See Hirsch v. Desmond*, No. 08-CV-2660 (JS)(AKT), 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); *Wiercinski v. Mangia 57, Inc.*, No. 09-CV-4413 (ILG), 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata*); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F. 3d 493, 498 (2d Cir. 2014) ("A court may consider a *res judicata* defense on a Rule

12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").

### a. *Res Judicata*

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). When considering application of the doctrine of res *judicata*, courts focus on whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action." *Marshall v. Grant*, 521 F. Supp. 2d 240, 245 (E.D.N.Y. 2007). "Additionally, under New York's transactional analysis approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *In re Hunter*, 827 N.E.2d 269, 274 (N.Y. 2005) (quoting *O'Brien v. City of Syracuse*, 429 N.E.2d 1158, 1159 (N.Y. 1981)). "*Res Judicata* turns on the 'essential similarity of the underlying events giving rise to the various legal claims.'" *Acevedo v. HSBC Bank USA N.A.*, 15-cv-9522 (KBF), 2016 WL 6652736, at *2 (S.D.N.Y. Nov. 10, 2016) (emphasis added) (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006)). "Whether a claim that was not raised in the previous action could have been raised therein 'depends *in part* on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *Marvel Characters*, 310 F.3d at 287 (emphasis in original) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1991)).

###### b.  Collateral Estoppel

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen*, 449 U.S. at 94. "Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters*, 310 F.3d at 288. The doctrine applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issues; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* at 289 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).

###### c.  Analysis

With these legal principles in mind, the Court addresses Wells Fargo's argument that the doctrines of preclusion bar the claims asserted by Anchieta in his Compliant. As noted above, in his motion to renew, Anchieta raised the very same argument in State Court that he now presents to this Court, to wit, that he acquired the Middlecamp Road Property free of any claimed interest of Wells Fargo because he is a bona fide purchaser. That argument failed as the State Court ruled in its Order Denying Motion to Renew that Anchieta was subject to the Judgment of Foreclosure and Sale and the notice of pendency.

In opposing Wells Fargo's argument that the doctrines of *res judicata* and collateral estoppel squarely apple here, Anchieta argues that he has a federal claim against Wells Fargo that was not previously adjudicated by the State Court and that this action is separate and independent of the State Court Foreclosure Action. For the following reasons, that argument fails. First, it is belied by the very claims asserted in the Complaint. The Complaint asserts two claims. Count One seeks a declaratory judgment that Anchieta owns the Middlecamp

Road Property free and clear of any lien asserted by Wells Fargo because he is a "bona fide purchaser/encumbrancer" of the Middlecamp Road Property and Count Two claims that Anchieta is an innocent purchaser who relied upon a recorded satisfaction of mortgage and thus took title free and clear of the asserted lien of Wells Fargo. Both claims were adjudicated by the State Court. *See* Order Denying Motion to Renew.

Second, Anchieta's argument that he has a "federal claim" appears to derive from his request for a declaratory judgment pursuant Rule 57. There is no corresponding Bankruptcy Rule 7057 that incorporates Rule 57 to bankruptcy cases. Rather, a declaratory judgment action is an adversary proceeding brought under Bankruptcy Rule 7001(9). That rule provides that an adversary proceeding includes "a proceeding to obtain a declaratory judgment relating to any of the foregoing." Fed. R. Bankr. P. 7001(9). The language "relating to any of the foregoing" refers to relief requested under the preceding Bankruptcy Rule 7001(1)-(8). The Complaint does not contain any request for relief under Bankruptcy Rule 7001(1)-(8). Notably, Anchieta is not requesting a determination as to the validity, priority, or extent of the lien of Wells Fargo under Bankruptcy Rule 7001(2). Instead, he steadfastly maintains that he is a bona fide purchaser for value and, as such, he purchased the Middlecamp Road Property free and clear of the mortgage, which he does not contest, held by Wells Fargo.

Lastly, Anchieta claims he is a "bona fide purchaser/encumbrancer" under NEW YORK REAL PROPERTY LAW § 266. Anchieta does not request a determination under any federal statute and his Complaint is replete with citations to New York state cases and NEW YORK REAL PROPERTY LAW § 266. There is not one federal statute or case mentioned and indeed, the word "federal" appears only once on page 6 when he references "federal or state court". In short, Anchieta has not raised any federal claim in his Complaint. He comes to this Court in order get a second bite of the apple on a state law issue after the State Court denied his

motion in which he sought the very same relief he now seeks from this Court, *see* Order Denying Motion to Renew. The State Court also declined his request to stay the foreclosure sale of the Middlecamp Road Property.

Having disposed of Anchieta's argument that the Complaint raises a federal claim that was not previously adjudicated in the State Court, the Court now turns to Wells Fargo's principal argument that the prior State Court decision bars all of the claims asserted by Anchieta in the Complaint under the applicable preclusion doctrines.

It is precisely because the State Court has previously ruled on the relief Anchieta requests before this Court that the Court finds the claims for relief sought in the Complaint are barred by the doctrine of *res judicata*. As noted above, when considering application of the doctrine of *res judicata*, courts focus on whether "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action." *Marshall v. Grant*, 521 F. Supp. at 245.

> As a general proposition, *res judicata* requires an identicality, or privity, of the plaintiffs and defendants in the initial and subsequent actions for preclusion to apply. *See LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester*, 40 F.3d 587, 591 (2d Cir. 1994). This rule, however, is not strictly imposed where the party against whom claim preclusion is sought has, in essence, already received his or her day in court, and the application of *res judicata* would not alter this conclusion. *See Alpert's Newspaper Delivery, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989).

*Pharr v. Evergreen Garden, Inc.*, 123 F. Appx. 420, 424 (2d Cir. 2005).

Here, the requirements for application of *res judicata* are met. Although Anchieta was not a party to the Foreclosure Action he nevertheless filed a motion in the Foreclosure Action seeking a declaration that he took title to the Middlecamp Road Property free and clear of all encumbrances, including the mortgage asserted by Wells Fargo. In so doing, Anchieta

actively sought a ruling by the State Court in the Foreclosure Action on the first claim for relief raised in his Complaint in this adversary proceeding. He received an adjudication on the merits of this claim when the State Court entered the October 6, 2022 Order Denying Motion to Renew. The State Court specifically held that "[d]espite the existence of the fraudulent Satisfaction of Mortgage, the Notice of Pendency and Judgment of Foreclosure and Sale were both entered in 2008 and therefore Anchieta is bound by these proceedings and took title subject thereto. Therefore, procedural defects notwithstanding, the motion is, in any event, without merit." Order Denying Motion to Renew (internal citation omitted).

Anchieta's second claim for relief in the Complaint faces a similar fate. The action he commenced in State Court and the adversary proceeding brought in this Court derive from the same factual events. The factual bases alleged are identical and Anchieta seeks the same relief, namely that as an innocent purchaser he took title to the Middlecamp Road Property free and clear of the lien asserted by Wells Fargo. Anchieta alleges he relied upon a recorded satisfaction of mortgage and a title report which he claims showed no open mortgages or any filed lis pendens. A review of the record shows that this issue was necessarily raised in Anchieta's motion to renew the Oct. 2020 Judgment which held that the mortgage satisfaction and the assignment of mortgage were fraudulently filed by Doresca. The State Court in the Order Denying Motion to Renew specifically addressed the fraudulent mortgage satisfaction in determining that Anchieta is bound by the Judgment of Foreclosure and Sale and the notice of pendency. Anchieta's contention notwithstanding, there is no difference between the claims he pursued in State Court and the claims he has brought in this adversary proceeding.

Even if the Court accepts for purposes of argument Anchieta's claim that neither this issue nor his claimed reliance on the title report was adjudicated in State Court on his motion to renew, it is an argument that could have been raised when he sought a determination in

State Court that he took title to the Middlecamp Road Property free and clear of Wells Fargo's mortgage. Under New York's transactional approach to *res judicata*, this second claim for relief arises out of the same transaction or series of transaction that was addressed by the State Court in its October 6, 2022 Order Denying Motion to Renew. "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (citation omitted). Accordingly, *res judicata* bars both claims for relief sought in Anchieta's Complaint. The State Court's Order Denying Motion to Renew precludes Anchieta's bid for the very same relief here.

In similar fashion, the claims for relief pursued by Anchieta in this Court are barred by the doctrine of collateral estoppel (issue preclusion). As discussed above, the doctrine applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issues; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Marvel Characters*, 310 F.3d at 289 (quoting *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).

Here, this test is met. First, the issue of whether Anchieta took title to the Middlecamp Road Property free and clear of all encumbrances, including the mortgage held by Wells Fargo, was raised by him in his motion to renew filed in the Foreclosure Action. Second, the issue was actually litigated in, and decided by, the State Court as set forth in the October 6, 2022 Order Denying Motion to Renew. Third, Anchieta had a full and fair opportunity to litigate the issues he now brings to this Court as it was Anchieta who moved in State Court for a determination that he is a bona fide purchaser based upon his claimed reliance on the satisfaction of mortgage and the title report. There is and can be no dispute that Anchieta

was fully able to raise these legal issues before the State Court. Fourth, and finally, resolution of the issue by the State Court was necessary to support a valid and final judgment on the merits. There is and can be no dispute as to the conclusive effect of the Order Denying Motion to Renew for purposes of collateral estoppel. Notably, a pending appeal does not preclude the application of collateral estoppel. *See DiSorbo v. Hoy*, 343 F.3d 172, 183 (2d Cir. 2003) ("Under New York law, the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis for collaterally estopping a party to that judgment in a second proceeding.") (internal quotation marks and citations omitted). Accordingly, collateral estoppel separately bars all claims asserted by Anchieta in his Complaint.

Lastly, the Court has carefully considered whether to exercise its discretion and permit Anchieta to obtain a new summons and re-serve both the new summons and the Complaint. The Court declines to do so. Having determined that all claims asserted by Anchieta in the Complaint are barred by *res judicata* and collateral estoppel, the Court finds that re-serving the Complaint would be futile. The Complaint would suffer the same fate as discussed above, namely that Anchieta cannot defeat a motion to dismiss premised on *res judicata* and collateral estoppel.

### Conclusion

For the reasons stated above, the Court grants Wells Fargo's motion and dismisses the Complaint in its entirety. The dismissal is with prejudice.

So ordered.

Dated: June 24, 2025
      Central Islip, New York

**Louis A. Scarcella**
**United States Bankruptcy Judge**